The fourth case for argument is United States v. Britt Lander. Mr. Howard? Thank you very much. Good morning. You may proceed. Well, hold on. Counsel's not seated yet. You may proceed. Good morning. You may please the Court. My name is Joe Howard, and I represent the defendant appellant, Mr. Britt Lander. Your Honors, this is a case out of the United States Court for the Northern District of Iowa. We're here to address several issues that arose during Mr. Lander's trial and his sentencing, and I'm respectfully asking the Court for a reversal of his conviction or at very least a reduction in his sentence. Before I begin, I just want to also appreciate the courtesies and professionalism I have been afforded by Mr. Wade. On behalf of the government, it's been a pleasure to work with him. I am CJA counsel for Mr. Lander, and admittedly, Mr. Lander is a methamphetamine-addicted person who has some substantial issues. He was convicted in the Northern District of conspiracy to distribute a controlled substance. Respectfully, I've listed a number of arguments in my brief. Mr. Lander had a number of counsel. I was the final counsel who actually represented him at trial. And pre-trial, he had filed a motion to suppress, wherein he argued that his custodial interrogation was the product of duress. He argued that he was under the influence. I respect the case law of the Eighth Circuit. Essentially, intoxication and fatigue do not automatically render a confession involuntary. However, he argues that under the circumstances, that his statements should be suppressed. Part of that also is that he argued that his wife was his legal counsel. We argue that he was attempting to invoke his right to counsel. Another argument we have made is the reliability of the trial witnesses brought in by the government. There were two essential witnesses whose testimony was arguably self-motivated and opportunistic. Essentially, the defendant is arguing that while he was addicted, he was not a co-conspirator, and that if he was a co-conspirator, that he should have been afforded a minor role reduction in his sentence. Going back to the idea that the reliability of the witnesses was questionable, at trial, one of the witnesses, Jose Duenas Topete, essentially argued or presented evidence that the defendant helped him essentially open a spare tire in which there were a number of bundles of methamphetamine, which were each packaged as 7-kilogram packages. At trial, his testimony was that he gave one of these packages to the defendant for his payment and testified that he gave him a pound, which was inconsistent because the packages were not pound packages. They were 7-kilogram packages. The idea here is that this gentleman was lying and the argument was that he didn't pay the defendant. Rather, the defendant was acting more as an addict and not a co-conspirator. Were those arguments made to the jury? Yes. Then we run into the problem that that's a credibility determination. What we've said in the past kind of repeatedly was that once those questions are before the jury and there are credibility questions, that they're virtually unreviewable here. There's got to be something more than they're not being . . . Really, they shouldn't have believed that. We need to have something more substantive. That's a bad credibility weighing plus. What's the plus?  I think that goes into addition. The other gentleman who testified, who was also in shackles, testified that initially he had told the officers that he had distributed maybe . . . he had the defendant distribute maybe 15 pounds of methamphetamine. Then at trial, he upped his testimony to 40 pounds. Okay, so which is it? Arguably, these gentlemen were self-motivated, like I said, opportunistic. I understand that that goes to the weight and the question of . . . excuse me, the weight of the evidence. Again, that's for the trier of fact to determine. I understand that. But in totality of the circumstances, one of the arguments we've made here is there's insufficient evidence to find guilt. But also, this also goes into our argument that we had petitioned the court for a downward . . . I think it was a variance. And we argued that because the defendant had a minimal role, that he should have been afforded a four-point deduction from his base offense level. Understandably, he was ultimately sentenced to 360 months. And looking at the sentencing guideline range as calculated without considering the minimal role, he did receive the bottom of the guideline calculation, which would have been the 360 months. But we argued in our brief that because of the unreliability of the witnesses and the inability to ultimately calculate the weight that was distributed, he should have been afforded a minimal role reduction. The court certainly disagreed with that and also found that because he was a career criminal, that automatically bumped his guideline calculations up to 360 to life. I've asked the court to afford me three minutes rebuttal unless the judges have questions. I'd like to reserve that time. You may. Thank you for your argument. Thank you, sir. And the court appreciates your willingness to accept the appointment in this case under the Criminal Justice Act. It is a pleasure and an honor. Thank you. Mr. Wade, we'll hear from you.  May it please the court, counsel, and I will say it was also a pleasure to work with Mr. Howard. In this case, Mr. Lander, defense raised basically three appeal points. It appears the primary issue is the suppression issue, although I'm not belittling their other two arguments. This court looks at whether the court committed error in its motion to suppress determination and denying it de novo, but looks at clear error for factual findings, which were kind of at the root of its ultimate decision. And the district court largely adopted the magistrate court's findings of fact and sometimes just verbatim, bullet-pointed type of rhetoric. Issue under the case law, two distinct dimensions in waiver. Is it voluntary, free of deliberation, and pre-deliberate choice, no coercion, deception. There wasn't as much of that emphasized by the defense. Defense was looking more towards the waiver with full awareness because he was intoxicated. There was also kind of a, it came out at the suppression hearing of sleeplessness, as he testified then. One thing that was pointed out is that at the time, he told the officers that he hadn't used that day, but he was stopped, but that he was an addict. At suppression hearing, he says he'd been using, you know, almost continuously for several days, although he didn't have any real evidence of that other than his own testimony. But the record of his interaction with the officers was captured by the body camera video by Officer Schuller at first, at the stop, and the Miranda waiter is a part of that. And then there was also the hour, hour and 40 minutes at the station, which was within an hour, with Officer Penick and Schuller. And during that, he also was advised of his Miranda rights, again, within the hour, a second time. And when you look at that, and the officers specifically talked about a number of things. He appeared nervous at first, especially at the traffic stop. Fast-talked a bit, a little fidgety or facial tension, but then that waned. It went away as they got more comfortable. He wanted to talk more. There was a discussion about cooperation, both by him and Officer Schuller and then by Officer Penick, and it waned. And then he became very good at answering questions and asking questions. It seemed more, I don't know, the way I would describe it as conversational for about an hour and 40 minutes. There was a little ebb and flow to it, but no confusion, really. There was clarifications, obviously, at times. There was discussion of how that would proceed. There was kind of a little cat and mouse game of how much he was admitting. Ultimately, based on the officer, the cooperator's testimony that he admitted that he was dealing with, they say they dealt pounds with him. He was telling the officer that he was dealing half ounces and ounces with them, so it was deadly accurate. But there was a little cat and mouse being played, but nothing that would show he was intoxicated, his will was overborne, which is really what this Court looks at. Under the totality of circumstances, was his will overborne by anything that the officers did or by his intoxication? And there just wasn't any evidence of that intoxication at that particular time. I would acknowledge that the initial officer said, I looked at maybe doing an OWI type of investigation, but as his nervousness quickly subsided, I saw no need to do that. I didn't see evidence of that. Counsel, I'd like to turn to Lander's argument that he invoked his right to counsel. Sure. It's at least a novel argument, and I'm not aware of any case law in this circuit that really is on point for this point. So what's your best argument that he did not clearly and unequivocally request counsel? Well, again, part of that's the record as found by the magistrate court and adopted by the district court. What they looked at is that Mr. Lander requested to speak to his girlfriend, and he used various terms. He said girlfriend, and then he said old lady. Clearly, when he filed his supplemental motion to suppress, he referred to her as a common-law wife type of situations who were evolved in how they phrased it, but he kept saying, I'd like to talk to her. It was denied. Clearly, this court has no, there's no authority in the Eighth Circuit that you can speak to a non-legally trained family member or counsel. I think there is. Well, but conversely, I'm not sure there's authority. I understand that. That's the magic words you have to say. But, and then his case law that he cited, and this goes a little bit to your point, because the case law cited by the district, by the magistrate court, to evaluate as well as the district court was the tribal council, which was some tribal authority that was cited. But in that case, the tribal council had, it was decided differently on different grounds, but the court said here there was no evidence of this person having any legal counsel, whereas in the tribal case, the person had some legal training. He cites another type of case that they also found inapplicable, but I think the key is if you listen to when he says it, at the only time he says it, my old lady is my attorney or my old lady is my counsel, he laughs. I mean, it's jest. And in the, there's a case the court, I think it's, I don't know, I had it here. Is that really relevant? I mean, maybe it's a situation like at the airport, you don't laugh at something. Well, I think it's relevant when you look at the context. I think the two things that make it difficult for the defense to say that he requested counsel and to get that is he requested to speak to her repeatedly before for other reasons. He wanted to see at the stop whether he should go talk to them, and then later whether he should actually go through active work with the agents. He's requested to speak with her as well. So he repeatedly requested it, and then at that time, it was right after Miranda Rights was warned, he says, yeah, my old lady is my attorney. Ha, ha. I want her present. I think the officers interpreted it as another, you know, kind of joking attempt to try and get her there. Did they know Lander? Say what? Did they know the defendant? Neither of these officers knew the defendant. Right. And so it's not impossible on its face when someone says my old lady is my lawyer, right, that that could actually be someone who is a lawyer, right? I mean, there's a part of me that kept saying, well, Alcester is like 750 people, and everybody kind of knows anybody, and there's no way that the police officers don't know every lawyer in town. And so they could dismiss it saying, yeah, whatever, that's an unserious thing, particularly in light of the conversation that went on before and, you know, in light of the laughter. But, you know, I mean, if you were sitting in, you know, Des Moines, and you say my old lady is my lawyer, I mean, if you're the cops, you've got to kind of take that seriously, right, until proven otherwise. Since it hadn't been referenced as his lawyer before in the conversation, I think that had some impact. The other impact, I would say, he wasn't known to these two officers. The people he was dealing with, or they thought he was dealing with, were known. But more importantly, before Officer Penick gets to the station to meet with him, because he's been told he wants to talk about drug trafficking, he called Ben Gill, who was the agent, who does know him, and Ben Gill filled him in on the background of this defendant. I can't say specifically about whether his old lady was a lawyer, because that probably was never mentioned, because she's not a lawyer, but it dealt with... Does the record show whether she is a lawyer? You just said she's not a lawyer. I mean, I don't know if it matters whether they knew at the time of the stop. If it turns out the record shows she's not a lawyer, then what would be the error in not acceding to the request? So I assume the government would have put on evidence that she's not a lawyer. Well, how this came about is that he didn't raise it in his motion to suppress, okay? He raised it in a supplemental motion to suppress, and he said that the record was good enough to hear it, the supplemental that I requested a lawyer. Before the government could even respond to that, we asked for time. We asked for, you know, did objections be stayed. The magistrate court said, I don't need a government response. I can rule, and she ruled. The magistrate court did. And the magistrate court, as I recall, in her ruling said she's not a lawyer. Everybody knew. Some reference that everyone knew she wasn't. So there's a finding. There's a finding, but I don't know that there was nothing... Just not adjusted to by the defense? Correct. And I don't think there was anything put on during the motion to suppress of who that person was other than the old lady or girlfriend of that context. But I do think that... I understand why there wasn't any evidence on it now given the chronology, but you think the magistrate judge said in the order she's not an attorney as a finding? I think there's a reference in there, and I think it's a reference in the order. We can read the order. Go ahead. I think it's in the order. I think that she made some reference, maybe not specifically exactly what you just said, but something that everybody knew she wasn't or something to that effect. I think the trial evidence in this case was pretty solid. It was very different types, historical, helped corroborate each other. Probably the most key evidence was the video and the photographs of the tire being opened by the defendant because he could identify his tattoos and his voice. There was also text messages and other corroboration provided. And then at sentencing, I think the district court followed all the rules that this court lays out, made its findings, and then alternatively, he was a career offender anyway, so he was looking at 360 life, and then as a reasonable sentence, the court went to the bottom of that range, citing recidivism and some other things, but clearly nothing erroneous. Thank you. Thank you for your argument. Mr. Howard, we'll hear rebuttal. Thank you very much, Your Honor. So based on the conversation that was just had, I think it's important for me to reiterate that the officers did not know whether or not his old lady, his girlfriend, or whatever else he referred to her as, was an attorney or not. I think the important thing is that when a citizen invokes his right to counsel or her right to counsel, it has to be respected. Case law is very clear that when that happens, any custodial interrogation at that point is to stop until the defendant suspect is afforded representation. And so regardless of the fact that he may have been under the influence of methamphetamine, I think his invocation of his right should have been acknowledged and respected. Even if the person he seeks to meet was not an attorney? Well, how did the officers know that? Well, I don't know if they did, but the district court says, I find, or the magistrate judge, I was looking in the interim here, the magistrate judge, quote, I find that everyone knew that Lander's wife was not actually an attorney. That's a finding, I guess, isn't that, finding a fact that we have in the record? I don't want to concede to that, because I don't remember that, frankly. If that's the case, you know, I don't want to disagree with the magistrate judge's finding, but Well, you could have objected to it, or the defendant could object to it, but No, but my point Go ahead. No, I didn't mean to interrupt you. No, go ahead. I just think, you know, as soon as the invocation's made, I think it has to be respected. And I think, you know, that kind of thing could have been sorted out afterwards, and if he wanted to participate in a custodial interrogation, he certainly could have after he'd been afforded and that issue had been flushed out. So in summary, I would ask the court to find that the district court erred in admitting his custodial interrogation statements, which were inculpatory, and I'd ask the court to reverse and remand this case for a new trial. Very well. Thank you for your argument. Thank you, sir. Thank you to both counsel. The case is submitted. Thank you very much.